(53 Misc. Rep. 576)

### CRESHKOFF v. SCHWARTZ.

(Supreme Court, Appellate Term. April 10, 1907.)

1. RELEASE—EVIDENCE—SUFFICIENCY.
   Evidence *held* sufficient to show that a release was obtained by fraud.
   [Ed. Note.—For cases in point, see Cent. Dig. vol. 42, Release, § 108.]

2. SAME—IMPEACHMENT OF RELEASE.
   A release of a claim arising out of a sale of void steamship tickets may be impeached for fraud in an action to recover for the money paid for the tickets.
   [Ed. Note.—For cases in point, see Cent. Dig. vol. 22, Release, § 44.]

Appeal from Municipal Court, Borough of Manhattan, Fifth District.
Action by Morris Creshkoff against Abraham Schwartz. From a judgment for plaintiff, defendant appeals. Affirmed.
Argued before GILDERSLEEVE, P. J., and GIEGERICH and ERLANGER, JJ.

Solotaroff & Solotaroff, for appellant.
Ignatz Weisengreen, for respondent.

ERLANGER, J. Defendant appeals from a judgment entered against him for the sum of $102 damages and costs. The complaint alleges that on July 8, 1905, in the city of New York, the defendant sold and delivered to plaintiff two steamship tickets from Rotterdam, Europe, to Philadelphia, for the use of the members of plaintiff's family, for which $90 was paid to and received by defendant; that thereafter, in March, 1906, plaintiff discovered that the tickets "were invalid, void, and of no effect"; that the defendant represented at the time of said sale that the tickets were "good and valid"; that by this means defendant obtained $90 without plaintiff receiving value. therefor; that he (plaintiff) was obliged to purchase "valid" tickets from a reliable dealer in place of those sold by defendant.; that on May 14,

1906, plaintiff demanded the return of the $90, which defendant refused to pay, and by means of threats compelled plaintiff to accept a promissory note for said sum, payable June 30, 1906; that the note, when due, was not paid, although payment was demanded; and that defendant converted said sum of $90 to his own use. The answer denies all the allegations of the complaint, and by way of separate defense a general release, executed by plaintiff to defendant on May 12, 1906, was pleaded.

Conversion was the theory upon which the action was tried. The only witness in the case was the plaintiff. He testified that, when he discovered that the tickets were worthless, he called upon the defendant and informed him of the fact, and demanded the return of his money; that the latter said to him that he would give him a three-months note; that the note was given, and when due "he [defendant] would not give me no money. He fired me downstairs." Further on plaintiff testified: "He said, 'I will give you this note, and you must sign a paper that you cannot sue me in less than three months.'" That he had no knowledge of the contents of the paper, except as stated. That he could neither read nor write English. The court then inquired, "Is the paper here?" and it was produced by defendant, and, upon being shown to him, plaintiff admitted that he signed it. The court then directed that it be marked in evidence, and it was so received as an exhibit for plaintiff. On cross-examination the plaintiff again declared: "He said: 'All in this paper is, you can't sue me for three months.'" Plaintiff then rested, and a motion was made to dismiss the complaint upon the grounds, among others, "that, if any action was proven at all, it was released by the general release." The motion was denied to which defendant excepted. Judgment was awarded to plaintiff for $102 damages and costs, and a motion was made at the same time "for a body execution against the defendant for conversion."

The defendant was not called, nor was his subscribing witness to the release. There appears to be some confusion in the record, resulting, no doubt, from the imperfect knowledge of plaintiff of the English language. While it is difficult to reconcile his evidence with the documentary proof, enough appears to show that he was made the victim of a shrewd speculator, who employed his craftiness among the more ignorant of his countrymen to obtain money from them by questionable means. Plaintiff was choused out of $90, and the defendant profited to that extent by selling to the former something which at the time had no greater value than mere waste paper. The note in evidence bears date May 14, 1906, and the release shows that it was executed on May 12, 1906. Unless an error was made in dating either of the papers, plaintiff must have been mistaken when he testified that at the time of the giving of the note defendant said to him: "I will give you this note, and you must sign a paper that you cannot sue me in less than three months." No attempt was made to reconcile this apparent inconsistency, and yet it may well be that both papers were signed and exchanged at the same time, and that the note was purposely dated a few days later and given to the plaintiffs, so that, in case action was brought thereon, the most that could happen was a

judgment which would not carry with it the penalty of an execution against the person. True, this is but conjecture; but the defendant could easily have explained the situation, but for reasons best known to himself he absented himself from the trial. While the note was admitted in evidence as a mere circumstance in the case, it seems not to be affected by the release, and it was tendered to defendant upon the trial.

But we are concerned, not with that question, but rather with the broader one as to whether, in view of the release concededly executed, the judgment can stand. Assuming for the purpose of this appeal, but without deciding, that the release is valid, could the trial court, who sua sponte directed it to be marked in evidence, ignore its effect as an instrument good on its face, and render judgment on the cause of action pleaded in the complaint? If the release be good, then it would seem that all causes of action existing in plaintiff's favor prior to its execution were merged in it, and fell per force of the instrument. Counsel for appellant contends that, if the judgment is sustained, serious consequences are likely to result to defendant; that his body is menaced, and is likely to be taken if the judgment so rendered against him is not paid. Authorities are cited to show that courts are slow to give effect to adjudications which may result in the seizure of the person, and we are asked to follow the precedents in this case, so that no harm can come to the defendant. Suffice it to say that there is not a single extenuating circumstance in the case in favor of defendant, and the court should not be astute to find a way to aid him. We think that enough was shown to justify the court in disregarding the release, upon the ground of fraud and misrepresentation, and that it was subject to impeachment for that reason upon the trial. In Grockie v. Hirshfield, 50 App. Div. 87–90, 63 N. Y. Supp. 365, Judge Laughlin, in writing for the court, said, referring to an instrument offered in evidence upon the trial:

"But, if considered as a release or agreement, it would, nevertheless, have been subject to impeachment, as evidence in this case, for mutual mistake, fraud, or any misrepresentation by which the plaintiff was induced to sign without knowing its contents; for, as between the parties, the plaintiff's negligence in not ascertaining the true contents is not a bar to such relief"—citing many cases.

In Fleming v. Brooklyn Heights R. R. Co., 95 App. Div. 110, 112, 88 N. Y. Supp. 732, the defendant pleaded a release to plaintiff's cause of action for injuries. Upon the trial it was relied upon to prevent a recovery. The court said:

"If the jury adopted the plaintiff's story as the truth, as much be assumed from the verdict, it cannot be said that the rejection of the release as a defense was without adequate support. It is well settled that a release so procured may be impeached upon the trial by plaintiff for fraud or misrepresentation."

See, also, Kirchner v. New Home Sewing Machine Co., 135 N. Y. 182, 189, 31 N. E. 1104.

Plaintiff's evidence clearly establishes that he was induced to execute the release by the misrepresentations of the defendant that the contents or effect of it were unknown to him, except that in signing it he

understood that he could not proceed against the defendant until after maturity of the note. The fraud upon the plaintiff was palpable; nor was plaintiff obliged to sue upon the note. He had the right to proceed upon the cause of action upon which he recovered. The determination below was correct.

The judgment is affirmed, with costs.

GILDERSLEEVE, P. J., concurs. GIEGERICH, J., concurs in result.